IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| EVONNE BRYANT, *et al.*, | ) | |
|     Plaintiffs, | ) | |
| | ) | |
|     v. | ) | Civil Action No. 2:20CV26 (RCY) |
| | ) | |
| CITY OF NORFOLK, *et al.*, | ) | |
|     Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

This matter is before the Court on Plaintiffs' Motion for Leave to File an Amended Complaint ("Motion to Amend") (ECF No. 90). Plaintiffs seek permission to add a claim for unlawful coercion, intimidation, threat, or interference under the Fair Housing Act, 42 U.S.C. § 3617, against Defendant Norfolk Redevelopment and Housing Authority ("NRHA") and its Executive Director, Ronald Jackson. The events underlying the Proposed Amended Complaint (ECF No. 90-1) stem from an August 27, 2020 letter sent by Director Jackson on NRHA letterhead to residents of the Tidewater Gardens public housing community. (Mem. Supp., ECF No. 91 at 5.) Plaintiffs filed the instant Motion to Amend on September 9, 2020.

The issue has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Motion to Amend will be GRANTED.

## I. BACKGROUND

In this action, filed January 13, 2020, public housing residents and community organizations seek to enjoin a joint City of Norfolk ("Norfolk") and Norfolk Redevelopment and Housing Authority ("NRHA") plan to redevelop public housing in the St. Paul's Quadrant of

1

Norfolk. (Compl., ECF No. 1.) The redevelopment plan ("Plan") has received a $30 million federal housing grant from United States Department of Housing and Urban Development ("HUD"). (*Id.* ¶ 2.) The Plan involves tearing down one of three public housing developments in the neighborhood, Tidewater Gardens, and replacing the buildings with a new mixed-income housing development. (*Id.* ¶ 3.) The Plan seeks to demolish and replace the remaining housing units in the future. (*Id.* ¶ 2.) According to the Plaintiffs, the existing public housing units in St. Paul's Quadrant are home to around 4,200 residents, who are mostly African American and have low incomes. (*Id.* ¶¶ 30-36.) Plaintiffs seek to enjoin the Plan and obtain a court order to require the government entities and the HUD Secretary to come up with a new redevelopment plan, to ensure the new plan addresses relocation of current residents during the redevelopment process, and to maintain the current quantity of existing housing units. (*Id.* at 49-51.) Plaintiffs also seek damages and attorneys' fees. (*Id.*) The action was brought against the City of Norfolk and the NRHA pursuant to Section 804 of the Fair Housing Act ("FHA"), 42 U.S.C. § 3604, and, as against HUD and Secretary Carson, FHA Section 808, 42 U.S.C. § 3608, and the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701 *et seq*. (*Id.* ¶¶ 166-69.)

On March 16, 2020, all Defendants filed responsive pleadings or motions to dismiss in response to the Complaint. (ECF Nos. 52, 53, 55, 56.) Plaintiffs filed a Motion for Preliminary Injunction on April 2, 2020, which seeks to temporarily halt the redevelopment plan and to require Norfolk and NRHA to eliminate health and safety violations in current units within sixty days. (ECF Nos. 59-60.)

On April 21, 2020, in the face of challenges caused by the COVID-19 pandemic and at the request of the parties, certain aspects of the litigation were paused. The Court granted a Joint Motion to extend response deadlines and incorporated the parties' stipulations regarding a

discovery plan.  (ECF No. 69.)  Under the adopted stipulations, the existing buildings would not be torn down for 180 days, and the parties were not required to file responsive briefs to either of the motions to dismiss or the Motion for Preliminary Injunction during that time period.  (*See* ECF No. 68.)  The parties agreed to a discovery schedule and to conduct private mediation.  Additionally, the parties stipulated that NRHA would address certain health and safety issues and that a letter would be sent to all residents of the subject housing units informing them that they did not need to move or look for new housing for the next 180 days.  The parties stipulated that at the conclusion of the 180-day stay, they "may renew" the motions to dismiss or preliminary injunction motion, subject to a slightly extended briefing schedule.  (ECF No. 68.)  Although discovery has been ongoing, none of these motions have been renewed since the conclusion of the 180-day period, nor have responsive briefs to the subject motions been filed.

## II. MOTION TO AMEND

On September 9, 2020, Plaintiffs filed a Motion for Leave to File an Amended Complaint in order to add Ronald Jackson, the Executive Director of NRHA, as a defendant and to add a claim against the NRHA and Executive Director Jackson for unlawful coercion, intimidation, threat, or interference in violation of the FHA, 42 U.S.C. § 3617.  (Mot. to Amend, ECF No. 90.)  Defendants Norfolk and NRHA opposed the motion, which ripened September 28, 2020.  (ECF Nos. 93-94, 97.)  HUD did not file a response.

Plaintiffs' proposed new claim stems from a letter delivered to all residents of Tidewater Gardens on August 27, 2020, that was sent on NRHA letterhead and signed by Executive Director Jackson ("Letter").  The Letter was critical of the instant lawsuit and various public positions taken by the Plaintiffs, and it suggested that Plaintiffs' actions would lead to high-rise buildings and further segregation, would restrict residents' ability to choose where to live, and might make it

3

harder for residents to obtain housing vouchers and moving support. (ECF No. 90-3.) The Letter to residents also referenced a recently entered protective order and said that Plaintiffs seek to "require NRHA to release its records of your personal medical information . . . [and] household information, including [] names, addresses, phone numbers, email addresses, voucher status, and disability status of anyone in your residence," without giving residents the ability to object. (*Id.*)

Plaintiffs claim that the Letter, which was sent three weeks after the Court entered a protective order and one day after a protest of the development plan at Norfolk City Hall, sought to intimidate, coerce, threaten, and interfere with the Plaintiffs because they pursued remedies for discrimination under the FHA. Plaintiffs argue that the Letter gives rise to NRHA's and Director Jackson's liability under 42 U.S.C. § 3617, and that the Motion to Amend was filed timely and in good faith. (Mem. Supp. at 1-3.)

In contrast, Defendants NRHA and Norfolk characterize the Letter as a justified response to a public campaign launched by the Plaintiffs against the redevelopment plan. (Norfolk Mem. Op., ECF No. 93 at 1-3; NRHA Mem. Op., ECF No. 94 at 1, 5-9.) NRHA suggests that it has a "legal obligation" to communicate with its residents about the redevelopment plan. (NRHA Mem. Op. at 9.) Both argue that the amendment would prejudice Defendants by delaying litigation when time is of the essence, because additional discovery would be required and an additional defendant would need to make an appearance. (Norfolk Mem. Op. at 7-10; NRHA Mem. Op. at 28-29.) They also argue that the amendment is futile because it cannot satisfy the requirements for a claim under § 3617, primarily because the Letter cannot plausibly be construed to "coerce, intimidate, threaten, or interfere with" the Plaintiffs' exercise of their rights under the FHA. (Norfolk Mem. Op. at 11-14; NRHA Mem. Op. at 19-23.) Both Norfolk and NRHA claim that the statute requires proof that NRHA and Director Jackson sent the Letter with discriminatory intent. (Norfolk Mem.

4

Op. at 11-13; NRHA Mem. Op. at 23-24.)  Finally, NRHA argues that Plaintiffs have not sufficiently pled an injury in fact.  (NRHA Mem. Op. at 23-24.)

### III. DISCUSSION

A. Rule 15

Rule 15(a)(2) of the Federal Rules of Civil Procedure dictates that if an amendment to a pleading is filed or requested beyond the period in which amendments are allowed as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  The Fourth Circuit interprets Rule 15(a) "to provide that leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would [be] futile."  *Laber v. Haney*, 438 F.3d 404, 426-27 (4th Cir. 2006) (internal quotations and citations omitted); *see Foman v. Davis*, 371 U.S. 178, 182 (1962).  The Court's decision on a motion to amend is reviewed for abuse of discretion.  *Foman*, 371 U.S. at 182.

An amendment is deemed "futile" if it cannot withstand a motion to dismiss.  *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995) (citations omitted)**.**  The Federal Rules of Civil Procedure only require that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2).  *Id.*  On a motion to dismiss, the Court "must assume that the allegations of the complaint are true and

5

construe them in the light most favorable to the plaintiff." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969)).

Finally, the determination of whether an amendment is prejudicial to a defendant is context-dependent and "will often be determined by the nature of the amendment and its timing." *Laber*, 438 F.3d at 427.

B. Stating a Claim Under 42 U.S.C. § 3617

The Proposed Amended Complaint adds a claim under 42 U.S.C. § 3617, the FHA's prohibition on interference with and retaliation for exercising rights under the FHA. The law provides:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C. § 3617.

In the Fourth Circuit, the elements of a § 3617 claim are: (1) the plaintiff was engaged in protected activity, (2) the defendant was aware of that activity, (3) the defendant took adverse action against the plaintiff, and (4) there is a causal connection between the protected activity and the adverse action. *Hall v. Greystar Management Servs., L.P.*, 637 F. App'x 93, 98 (4th Cir. 2016) (citations omitted) (unpublished); *Altamira-Rojas v. City of Richmond*, 184 F. Supp. 3d 290, 295 (E.D. Va. 2016) (citation omitted); *see generally* ROBERT G. SCHWEMM, HOUSING DISCRIMINATION LAW AND LITIGATION § 20:5 (July 2020) (citing cases applying similar test across federal circuits). This test draws from the elements of a retaliation claim under Title VII of the Civil Rights Act of 1964. *Hall*, 637 F. App'x at 98 (citing *Betsey v. Turtle Creek Assocs.*, 736 F.2d 983, 987 (4th Cir.1984); *Smith v. Town of Clarkton*, 682 F.2d 1055, 1065 (4th Cir.1982)).

Turning to the § 3617 test, the parties do not appear to contest the first two elements of a § 3617 claim: that Plaintiffs were engaged in protected activity and that the Defendants were aware of that protected activity. The statute specifically protects the "exercise or enjoyment" of rights under § 3604, the FHA housing discrimination section under which the Plaintiffs brought the instant lawsuit. There does not appear to be any question, then, that bringing the suit is protected activity under § 3617 and that the Defendants were aware of the lawsuit—indeed, the Letter was all about it. The third element—adverse action—is most hotly contested.

The adverse action requirement encompasses coercion, intimidation, threats, or interference as listed in § 3617. *See Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001). These terms are interpreted based upon their plain meaning. *Id.* at 1128-29. "[Section] 3617 does not require a showing of force or violence for coercion, interference, intimidation, or threats to give rise to liability." *Id.* at 1128. HUD promulgated a regulation purporting to interpret § 3617, which includes the following in a non-exclusive list of prohibited conduct: "Retaliating against any person because that person has made a complaint, testified, assisted, or participated in any manner in a proceeding under the Fair Housing Act." 24 C.F.R. § 100.400.

Under Title VII, the adverse action element is analyzed based on whether a "reasonable employee" would find the action to be "materially adverse" in the context in which it was taken. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Because Title VII and the FHA are typically interpreted interchangeably, this "reasonable person" standard is typically applied in FHA suits as well. *See Geraci v. Union Square Condo. Ass'n*, 891 F.3d 274, 277 (7th Cir. 2018) (looking to whether the defendant's conduct "would 'coerce, intimidate, threaten, or interfere with' a person of reasonable fortitude").

7

The final element of a § 3617 claim requires that the plaintiff establish a "causal connection" between the adverse action taken and the plaintiff's exercise of her rights under the FHA. *Hall*, 637 F. App'x at 98. Thus, the question is whether the Defendants' actions (sending the Letter) were motivated by the Plaintiffs' exercise of their FHA rights (bringing a lawsuit under § 3604).

Notably, both Norfolk and NRHA argue that the Plaintiffs must also establish that the Letter was motivated by an intent to discriminate based on race. (Norfolk Mem. Op. at 11-13; NRHA Mem. Op. at 23-24.) The Plaintiffs in their initial brief even suggested that this might be required. (Mem. Supp. at 9.) The parties' position appears to be based primarily on a 1992 case from this district that recites a different four-part test that includes a discriminatory intent element. *People Helpers, Inc. v. City of Richmond*, 789 F. Supp. 725, 732, (E.D. Va. 1992); *see Abdelhalim v. Lewis*, 2020 WL 3271378 at *5 (E.D. Va. June 17, 2020) (relying on case citing *People Helpers*).[1] Indeed, § 3617 does not include any text that suggests a discriminatory intent requirement, but rather it broadly protects against interference with the exercise of rights granted by the FHA. *See* 42 U.S.C. § 3617; *Haws v. Norman*, 2017 WL 4221064 at *10 (D. Utah Sept. 20, 2017) ("Requiring the plaintiff to show an intent to discriminate based on disability would narrow the scope of the statute considerably with no basis in the statutory language.") The Fourth Circuit's most recent articulation of the § 3617 test, in an unpublished opinion in *Hall v. Greystar*

---

[1] *People Helpers* was a 1992 opinion that articulated the test based on three contemporaneous district court cases in other districts. 789 F. Supp. at 732 (citations omitted). The discriminatory intent element was based on early 1990s district court cases from the Districts of New Jersey and Puerto Rico. *Id.* (citing *Oxford House–Evergreen v. City of Plainfield*, 769 F. Supp. 1329, 1343 (D.N.J.1991); *Casa Marie, Inc. v. Superior Court of Puerto Rico for Dist. of Arecibo*, 752 F. Supp. 1152, 1168 (D.P.R. 1990)). Most circuits now use a variation of the test outlined previously, which draws from the Supreme Court's Title VII jurisprudence. *See* SCHWEMM § 20:5, *supra*. And as discussed, the Fourth Circuit indicated in its unpublished opinion in *Hall* that the Title VII-based test applies to § 3617 claims. 637 F. App'x at 98 (citations omitted).

*Management Services, L.P.*, did not incorporate a discriminatory intent requirement, but rather applied the four-part test discussed above. 637 F. App'x at 98 (citations omitted).

Finally, the Supreme Court has interpreted standing under the FHA expansively, holding that standing should be defined as broadly as allowable under Article III of the Constitution. *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972). Analyzing standing under FHA's civil enforcement provision, the Supreme Court held that "the sole requirement for standing to sue under [42 U.S.C. § 3612] is the Art. III minima of injury in fact: that the plaintiff allege that as a result of the defendant's actions he has suffered 'a distinct and palpable injury.'" *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

C. Application

At the motion to amend stage, the Plaintiffs have met their burden to establish that (1) they have plausibly alleged standing, (2) the amendment is made in good faith and would not be sufficiently prejudicial to the Defendants, and (3) the amendment plausibly states a claim under § 3617. The Motion to Amend was timely filed: within two weeks from the distribution of the August 27, 2020 Letter. And the Letter sent by NRHA's Executive Director plausibly gives rise to a claim under 42 U.S.C. § 3617. The Letter construed Plaintiffs' legal positions in the instant FHA suit in a negative and, at times, false or misleading light. It was allegedly sent to hundreds of Plaintiffs' neighbors by the individual in charge of their public housing. The Letter was directly related to the Plaintiffs' FHA lawsuit, and it can plausibly be construed to "coerce, intimidate, threaten, or interfere with" Plaintiffs' or other residents' exercise of FHA rights. At this stage, the Court need not decide whether that claim will be successful, only that it is plausible. The Court finds that it is.

First, Plaintiffs have alleged an injury-in-fact in their Proposed Amended Complaint that is sufficient to survive a motion to dismiss. The Proposed Amended Complaint gives context to the Letter and alleges that NRHA and Executive Director Jackson "sought to capitalize on residents' fears to drive a wedge between Plaintiffs and the rest of their community." (ECF No.90-1 ¶¶ 163-64.) Further, Plaintiffs allege, "The NRHA's message that the Plaintiffs sought and this Court ordered a far reaching inquiry into residents' personal lives is a falsehood designed to create antagonism against the Plaintiffs, intimidate the Plaintiffs, and intimidate Tidewater Gardens residents." (*Id.* ¶ 166.) Crucially, they allege that the Letter "coerces, intimidates, threatens, and/or interferes with the rest of the Tidewater Gardens residents in asserting their individual rights under the Fair Housing Act or their aiding and encouraging Plaintiffs in asserting their rights under the Fair Housing Act." (*Id.* ¶ 168.) This is an injury that is both cognizable under the FHA and distinct to the Plaintiffs. At this pleading stage, this is enough to meet the Article III minima of a "distinct and palpable injury." *See Havens Realty Corp.*, 455 U.S. at 372 (citation omitted).

Second, the Court rejects Norfolk's and NRHA's argument that the proposed amendment should be denied because it would be prejudicial to them. Considering the entire context, there is no evidence of bad faith or intent to delay the litigation: the proposed amendment was filed within two weeks of delivery of the Letter that triggered the proposed amendment. Moreover, the Letter itself was sent by the Executive Director of Defendant NRHA on the Authority's letterhead. Thus, the proposed amendment is a consequence of actions directly attributable to NRHA. And finally, though Norfolk and NRHA raise concerns about the prospect of delaying the litigation, the single claim raised in the amendment would seem to warrant limited, if any, discovery. The claim is primarily tied to the Letter, which would be entered as an exhibit to the Amended Complaint. Any further discovery should be relatively minimal.

Third, Plaintiffs' proposed amendment sufficiently states a claim under 42 U.S.C. § 3617 such that the amendment is not futile.  At this stage, the Court is to construe all well-pled facts as true and in the light most favorable to the Plaintiff.  *Republican Party of N.C.*, 980 F.2d at 952 (citations omitted).  Under this standard, there is little doubt that elements one, two, and four of the four-factor test are satisfied: (1) the plaintiff was engaged in protected activity by bringing a lawsuit under 42 U.S.C. § 3604, (2) NRHA and Executive Director Jackson were aware of the suit, referencing it directly in the Letter, and (4) the Letter was causally related to the protected activity—the lawsuit.

The key element is the third, whether the Letter constituted an "adverse action" under § 3617 such that it was coercive, intimidating, threatening, or interfering.  Under a plausibility standard, it can be construed as all four.  As Plaintiffs point out, the Letter was distributed in the context of a power asymmetry: the proprietor of a mostly low-income housing community criticizing individual residents and community groups before the entire neighborhood.  (ECF No. 90-1 ¶ 164.)  The Letter contained claims that appeared designed to agitate Tidewater Gardens residents: it claimed that Plaintiffs wanted to "decide how and where you and your families should live" and "want to compel NRHA to release its records of your personal medical information— without asking your permission." (*See* ECF No. 90-3; *see also* ECF No. 90-1 ¶¶ 165-66.)  It is not necessary to assess the truth of the various assertions in the Letter at this stage, because the Court is to construe the allegations about their falsity in favor of the Plaintiff.  But the Court notes that, for example, NRHA's brief fails to provide any justification for the claim in the Letter addressed to all Tidewater Gardens residents that Plaintiffs "want to compel NRHA to provide . . . [the] disability status of anyone in your residence." (ECF No. 90-3; *see* NRHA Mem. Op.; Proposed Amended Compl. ¶ 166.)  Based upon this context and the plain meaning of the statutory terms,

11

Plaintiffs' proposed amendment plausibly states a claim that the Letter was designed to coerce, intimidate, threaten, or interfere with Plaintiffs' FHA suit by attacking their motivations and reputation in front of their neighbors, who are thereby dissuaded from supporting or assisting the Plaintiffs, and perhaps are even coaxed into antagonism toward the suit.

Therefore, Plaintiff has plausibly made out all four elements of a § 3617 claim, and thus the proposed amendment would not be futile.

### IV. CONCLUSION

Though NRHA has specific legal obligations to communicate with the residents of its public housing developments, NRHA and Director Jackson were not legally obligated to send a letter criticizing residents and community groups based on their legal and public positions in a Fair Housing Act lawsuit. Because Plaintiffs' proposed amendment was not filed in bad faith, is not prejudicial, and is not futile, the Court will grant Plaintiffs' Motion for Leave to File an Amended Complaint (ECF No. 90).

Let the Clerk file this Memorandum Opinion electronically and notify all counsel accordingly.

An appropriate Order shall issue.

/s/ *Rcy*
Roderick C. Young
United States District Judge

Richmond, Virginia
Date: February 26, 2020